**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| FLOWBEE AUSTRALIA PTY LTD, BEEINVENTIVE PTY LTD, and CEDAR ANDERSON,<br><br>              Plaintiffs,<br><br>      v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A TO THE COMPLAINT,<br><br>              Defendants. | Case No. 25-cv-12721 |

**COMPLAINT**

Plaintiffs FLOWBEE AUSTRALIA PTY LTD ("Flowbee"), BEEINVENTIVE PTY LTD ("BeeInventive"), and CEDAR ANDERSON ("Anderson") (collectively, "Plaintiffs") hereby allege as follows against the individuals, corporations, limited liability companies, partnerships, and unincorporated associations and foreign entities identified on Schedule A attached hereto (collectively, "Defendants"):

<u>**Introduction**</u>

1.      This is a civil action for patent infringement and federal trademark infringement to combat e-commerce store operators who trade upon Plaintiffs' reputation and goodwill by making, using, offering for sale, selling and/or importing into the United States for subsequent sale or use unauthorized and unlicensed products that infringe Plaintiffs' patented design for an artificial honeycomb frame, which is covered by at least U.S. Design Patent Nos. D790,776 S (the "<u>FLOW</u>

1

HIVE Patent"); and the FLOW HIVE trademarks, which are covered by at least U.S. Trademark Registration Nos. 7,701,794 and 4,911,002 (the "FLOW HIVE Trademarks").

2.      The FLOW HIVE Patent and the FLOW HIVE Trademark registrations are valid, subsisting, and in full force and effect. Flowbee and Anderson are the owners and lawful assignees of all right, title, and interest in and to the FLOW HIVE Patent, which were duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the FLOW HIVE Patent is attached hereto as **Exhibit 1**. Flowbee is the owner of the federally registered FLOW HIVE Trademarks. A true and correct copy of the federal trademark registration certificates for the FLOW HIVE Trademarks is attached hereto as **Exhibit 2**.

3.      Each of the Defendants directly and/or indirectly imports, develops, designs, manufactures, distributes, markets, offers to sell and/or sells counterfeit products infringing Plaintiffs' FLOW HIVE Patent and/or the FLOW HIVE Trademarks (the "Counterfeit Products") in the United States, including in this Judicial District, and otherwise purposefully directs infringing activities to this district in connection with the Counterfeit Products. Defendants conduct this activity through their numerous fully interactive commercial Internet e-commerce stores operating under the online marketplace accounts identified in **Schedule A** attached hereto (collectively, the "Defendant Internet Stores"), including but not limited to the platforms Amazon.com ("Amazon"), DHgate.com ("DHgate"), eBay.com ("eBay"), Shein.com ("Shein"), Temu.com ("Temu"), and Walmart.com ("Walmart") (collectively, the "Marketplace Platforms").

4.      The Defendant Internet Stores also share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' illegal operations arise out of the same transaction, occurrence, or series of transactions or occurrences.

5.      Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal counterfeiting operation. Plaintiffs are forced to file this action to combat Defendants' counterfeiting of Plaintiffs' patented design and federally registered FLOW HIVE Trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet.

6.      As a result of Defendants' actions, Plaintiffs have been and continue to be irreparably damaged from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing their patented design, and, therefore, seek injunctive and monetary relief.

7.      This Court has personal jurisdiction over each Defendant, in that each Defendant conducts significant business in Illinois and in this Judicial District, and the acts and events giving rise to this lawsuit of which each Defendant stands accused were undertaken in Illinois and in this Judicial District.

8.      In addition, each Defendant has offered to sell and ship Counterfeit Products into this Judicial District.

## **Jurisdiction and Venue**

9.      This Court has original subject matter jurisdiction over the patent infringement claim arising under the patent laws of the United States pursuant to 35 U.S.C. § 1 *et seq.*, 28 U.S.C. § 1338(a), and 28 U.S.C. § 1331.

10.      This Court has original subject matter jurisdiction over the trademark infringement and false designation of origin claims pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

11.     This Court has jurisdiction over the unfair deceptive trade practices claim in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

12.     This Court has personal jurisdiction over each Defendant, in that, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Illinois and in this Judicial District, and/or derive substantial revenue from business transactions in Illinois and in this Judicial District and/or otherwise avail themselves of the privileges and protections of the laws of the State of Illinois such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiffs in Illinois and in this Judicial District such that Defendants should reasonably expect such actions to have consequences in Illinois and this judicial District, for example:

a.     The Defendant Internet Stores accept orders of Counterfeit Products from and offer shipping to Illinois addresses located in this judicial District.

b.     Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including those in Illinois, in this Judicial District, through accounts (the "User Accounts(s)") with online marketplace platforms including but not limited to the Marketplace Platforms, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, through which consumers in the U.S., including Illinois (and more particularly, in this Judicial District), can view the one or more of Defendants' online

marketplace accounts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products (as defined *infra)* and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including Illinois (and more particularly, in this Judicial District), as a means for establishing regular business with the U.S., including Illinois (and more particularly, in this Judicial District).

      c.    Upon information and belief, Defendants have transacted business with consumers located in the U.S., including Illinois (and more particularly, in this Judicial District), for the sale and shipment of Counterfeit Products.

13. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a) because Defendants have committed acts of patent infringement in this Judicial District, do substantial business in the Judicial District, have registered agents in this Judicial District, and reside or may be found in this district.

**<u>Plaintiffs</u>**

14. Plaintiff Cedar Anderson is the owner of Plaintiffs Flowbee and BeeInventive, two companies with their principal place of business located in Newrybar NSW, Australia. Plaintiffs specialize in the development and marketing of its proprietary beehive (the "FLOW Hive") with a unique honeycomb frame (the "FLOW Frame") (collectively, the "FLOW Products"). The FLOW Products include a partially formed BPA- and BPS-free food-grade plastic honeycomb with vertical channels that uses gravity to harvest honey. Plaintiffs are the official source of the FLOW Products, including the products pictured immediately below:







15.     Flowbee is the registered owner of all rights, title, and interest in and to the FLOW

HIVE Trademarks (attached as Exhibit 2), as follows:

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 4,911,002 | FLOW (Class 20) | March 8, 2016 |
| 7,701,794 | FLOW HIVE (Class 20, 35) | February 25, 2025 |

16.     Flowbee and Anderson are the registered owners and lawful assignees of all rights,

title, and interest in and to the FLOW Design Patent (attached as Exhibit 1), as follows:

| U.S. Patent Number | Claim | Issue Date |
|---|---|---|
| D790,766 S |  | June 27, 2017 |

17.     Since Plaintiffs launched the FLOW Hive in 2015, the company has followed a

defined strategy for positioning its brand, marketing and promoting the product line in the industry

and to consumers and establishing distribution channels. Plaintiffs' promotional efforts for the

FLOW Hive include, by way of example but not limitation, substantial print media, the

www.honeyflow.com.au, https://www.honeyflow.com, https://eu.honeyflow.com,

https://ca.honeyflow.com, and https://uk.honeyflow.com websites ("The Honeyflow Websites").

Advertising campaigns on YouTube, Instagram, TikTok and Facebook, of which it has a combined

total of roughly 2.5 million followers.  The FLOW Products are promoted by influential celebrities

and continue to leave a lasting impression on consumers worldwide. Plaintiffs have run successful campaigns on crowdfunding platform Indiegogo. Plaintiffs exceeded its $70,000 goal and raised over $12 million, receiving over 25,000 orders from 130 countries, becoming the platform's most successful campaign ever. In addition, Plaintiffs have a strong presence at multiple beekeeping events every year, and act as event key sponsor, to demonstrate how the FLOW Products work. Indeed, they have a strong presence at many Beekeeping Expos and Beekeeping events around the world, including in the USA. Plaintiffs have expended substantial time, money, and other resources in advertising and otherwise promoting the FLOW Products.

### The FLOW Products

18.    Plaintiffs were the first to market a honeycomb frame in a proprietary beehive, the FLOW Hive and FLOW Frame, with an industry-changing frame design that allows beekeepers to safely and efficiently extract honey without harming any bees.

19.    Plaintiffs have ensured that the FLOW Products meets the most stringent regulatory requirements in order to ensure the product's safety and effectiveness.

20.    Plaintiffs' FLOW Products are distributed and sold to consumers throughout the world, including in the United States and Illinois through authorized retailers, various affiliates, and the Honeyflow Websites.

21.    The FLOW Products have become enormously popular, driven by Plaintiffs' arduous quality standards and innovative design. The FLOW Products are known for their distinctive designs and innovation. These designs are broadly recognized by consumers as being sourced from Plaintiffs. Products fashioned after these designs are associated with the quality and ingenuity that the public has come to expect from the FLOW Products.

## The Defendants

22.     Defendants are individuals and business entities who, upon information and belief, reside mainly in the People's Republic of China or other foreign jurisdictions. Defendants conduct business throughout the United States including within Illinois and in this Judicial District, through the operation of fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit FLOW Products to consumers within the United States, including Illinois and in this Judicial District.

## The Defendants' Unlawful Conduct

23.     The success of FLOW Products has resulted in significant counterfeiting.

24.     Plaintiffs have identified numerous Defendant Internet Stores linked to fully interactive websites and marketplace listings offering for sale, selling, and importing counterfeit FLOW Products to consumers in this Judicial District and throughout the United States.

25.     Defendants have persisted in creating such online marketplaces and internet stores, like the Defendant Internet Stores.  In fact, such online marketplaces and stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. According to an intellectual property rights seizures statistics report issued by the United States Department of Homeland Security, the manufacturer's suggested retail price ("MSRP") of goods seized by the U.S. government in fiscal year 2017 was over $1.2 billion. Internet websites like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year.

9

26.     On personal knowledge and belief, Defendants facilitate sales by designing the Defendants' Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine FLOW Products.

27.     Many of the Defendants' Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards, Western Union, and PayPal. Defendant Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website.

28.     Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and PayPal® logos.

29.     Plaintiffs have not licensed or authorized Defendants to use the FLOW Hive Patent and/or the FLOW HIVE Trademarks, and none of the Defendants are authorized retailers of the genuine FLOW Products.

30.      On personal knowledge and belief, Defendants deceive unknowing consumers by using the FLOW HIVE Patent and/or the FLOW HIVE Trademark registrations without authorization within the product descriptions of their Defendant Internet Stores to attract customers, as well as embodied by the counterfeit products themselves.

31.     On personal knowledge and belief, Defendants also deceive unknowing consumers by using unauthorized search engine optimization ("SEO") tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for the genuine FLOW Products.

32.     Further, Defendants utilize similar illegitimate SEO tactics to propel new domain names to the top of search results after others are shut down. As such, Plaintiffs also seek to disable the domain names owned and/or operated by Defendants that are the means by which the Defendants could continue to sell counterfeit FLOW Products into this District.

33.     On information and belief, Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. For example, it is common practice for counterfeiters to register their Defendant Internet Stores with incomplete information, randomly typed letters, or omitted cities or states.

34.     On personal knowledge and belief, even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants' Internet Stores.  For example, some of the Defendant Internet Stores have virtually identical layouts, even though different aliases were used to register the respective domain names.

35.     In addition, the Counterfeit Products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the Counterfeit Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

36.     The Defendant Internet Stores also include other notable common features, including accepted payment methods, check-out methods, metadata, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, similar hosting services, similar name servers, and the use of the same text and images.

37.     In addition, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. For example, counterfeiters like Defendants will often register new online marketplace accounts under User Accounts once they receive notice of a lawsuit.[1]

38.     Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners.[2]

39.     Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2012 U.S. Customs and Border Protection report on seizure statistics indicated that the Internet has fueled "explosive growth" in the number of small packages of counterfeit goods shipped through the mail and express carriers.

40.     Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiffs' enforcement efforts.

41.     On personal knowledge and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases

---

[1]     https://www.ice.gov/news/releases/buyers-beware-ice-hsi-and-cbp-boston-warn-consumers-about-counterfeit-goods-during (noting counterfeiters are adept at "setting up online stores to lure the public into thinking they are purchasing legitimate good on legitimate websites") (last visited September 15, 2022).

[2] While discussed in the context of false pharma supply chains, rogue internet servers and sellers are a well-known tactic that have even been covered in congressional committee hearings. https://www.govinfo.gov/content/pkg/CHRG-113hhrg88828/html/CHRG-113hhrg88828.htm (last visited September 15, 2022).

indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to foreign-based bank accounts outside the jurisdiction of this Court.

42. Defendants, without any authorization or license from Plaintiffs, have knowingly and willfully used and continue to use the FLOW HIVE Patent and/or the FLOW HIVE Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the Internet.

43. Each Defendant Internet Store offers shipping to the United States, including Illinois (in this Judicial District) and, on information and belief, each Defendant has offered to sell counterfeit FLOW Products into the United States, including Illinois (in this Judicial District).

44. Defendants' use of the FLOW HIVE Patent and/or the FLOW HIVE Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiffs.

45. Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the FLOW HIVE Patent and/or the FLOW HIVE Trademarks, of the fame and incalculable goodwill associated therewith and of the popularity and success of the FLOW Products, and in bad faith proceeded to manufacture, market, develop, offer to be sold, and/or sell the Counterfeit Products.

46. Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs and FLOW Products.

**FIRST CAUSE OF ACTION**
**DESIGN PATENT INFRINGEMENT**
**(35 U.S.C. § 271)**
**[Against Defendants Designated in Schedule A]**

47.     Plaintiffs hereby repeat and incorporate by reference herein the allegations set forth in the preceding paragraphs of this Complaint.

48.     Defendants are and have been making, using, selling, offering for sale, and/or importing into the United States for subsequent sale or use, without authority, Counterfeit Products that infringe directly and/or indirectly the FLOW HIVE Patent.

49.     For example, below is a comparison of figures from Plaintiffs' FLOW HIVE Patent and FLOW Products and exemplary images of Defendants' Counterfeit Products sold on Defendant Internet Stores.





*Images from the FLOW Hive Patent and of FLOW Products Incorporating the FLOW Hive Patent in Comparison With*

*Exemplary Counterfeit Products Sold on Defendant Internet Store*

50.     Defendants' activities constitute willful patent infringement and counterfeiting under 35 U.S.C. § 271.

15

51.     Defendants have infringed the Plaintiffs' FLOW HIVE Patent through the aforesaid acts and will continue to do so unless enjoined by this Court. Defendants' wrongful conduct has caused Plaintiffs to suffer irreparable harm resulting from the loss of their lawful patent rights to exclude others from making, using, selling, offering for sale, and importing the patented invention. Plaintiffs are entitled to injunctive relief pursuant to 35 U.S.C. § 283.

52.     Plaintiffs are entitled to recover damages adequate to compensate for the infringement pursuant to 35 U.S.C. §§ 284, 289, including Defendants' profits.

**SECOND CAUSE OF ACTION**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**
**[Against Defendants Designated in Schedule A]**

53.     Plaintiffs hereby repeat and incorporate by reference herein its allegations set forth in the preceding paragraphs of this Complaint.

54.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered FLOW HIVE Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of counterfeit goods. The FLOW HIVE Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Plaintiffs' FLOW Products provided under the FLOW HIVE Trademarks.

55.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the FLOW HIVE Trademarks without Plaintiffs' permission.

56.     Flowbee is the registered owner of the FLOW HIVE Trademarks. The United States Registration for the FLOW HIVE Trademarks (Exhibit 2) is in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiffs' rights in the FLOW HIVE Trademarks and are willfully infringing and intentionally using counterfeits of the FLOW HIVE Trademarks. Defendants' willful, intentional, and unauthorized use of the FLOW HIVE

Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

57.     Defendants' activities constitute willful trademark infringement and counterfeiting under 15 U.S.C. § 1114, 1117.

58.     The injuries and damages sustained by Plaintiffs have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

59.     Plaintiffs have no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their well-known FLOW Products.

**THIRD CAUSE OF ACTION**
**FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))**
**[Against Defendants Designated in Schedule A]**

60.     Plaintiffs hereby repeat and incorporate by reference herein its allegations set forth in the preceding paragraphs of this Complaint.

61.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiffs.

62.     By using the FLOW designs and marks in connection with the sale of Counterfeit Products embodying the FLOW HIVE Patent Registrations and/or the FLOW HIVE Trademark Registrations, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

63.     Defendants' conduct constitutes willful false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public under 15 U.S.C. §§ 1114, 1125.

64.     Plaintiffs have no adequate remedy at law, and, if Defendants' actions are not enjoined, Plaintiffs will continue to suffer irreparable harm to their reputation and the goodwill of their brand.

## FOURTH CAUSE OF ACTION
### VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
### (815 ILCS § 510/1, et seq.)
### [Against Defendants Designated in Schedule A]

65.     Plaintiffs hereby repeat and incorporate by reference herein the allegations set forth in the preceding paragraphs of this Complaint.

66.     Plaintiffs have not licensed or authorized Defendants to use the FLOW HIVE Patent and/or the FLOW HIVE Trademarks, and none of the Defendants are authorized retailers of genuine FLOW Products.

67.     Defendants knowingly and intentionally trade upon Plaintiffs' reputation and goodwill by selling and/or offering for sale products in connection with Plaintiffs' FLOW HIVE Patent and/or FLOW HIVE Trademarks.

68.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the quality, affiliation, connection, or association with Plaintiffs or the origin, sponsorship, or approval of Defendants' Counterfeit products by Plaintiffs.

69.     Defendants knew, or should have known, that their promotion, marketing, offering for sale, and sale of counterfeit FLOW Products has caused and will continue to cause confusion, mistake, and deception among purchasers, users, and the public.

70.     In fact, Defendants have fraudulently represented by their statements and actions that the Counterfeit Products are Plaintiffs' products including, for example, by: (i) using SEO tactics and social media to misdirect customers seeking FLOW Products to Defendants' online marketplace accounts; (ii) using deceptive advertising practices within the text and metadata of the online marketplace accounts; and (iii) taking other steps to deceive and confuse the consuming public.

71.     On information and belief, Defendants' conduct is willful and intentional as Defendants attempt to avoid liability by concealing their identities, using multiple fictitious names and addresses to register and operate their illegal counterfeiting operations and Defendant Internet Stores.

72.     Plaintiffs have no adequate remedy at law, and Defendants' conduct has caused Plaintiffs to suffer damage to their reputation and goodwill. Unless enjoined by the Court, Plaintiffs will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as follows:

73.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

> a.  making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use any products not authorized by Plaintiffs and that include any reproduction, copy or colorable imitation of the designs claimed in the FLOW HIVE Patent and/or FLOW HIVE Trademarks;

b.  passing off, inducing, or enabling others to sell or pass off any product as the genuine FLOW Hive or any other product produced by Plaintiffs that is not Plaintiffs' or not produced under the authorization, control, or supervision of Plaintiffs and approved by Plaintiffs for sale under the FLOW HIVE Patent and/or FLOW HIVE Trademarks;

c.  committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiffs, or are sponsored by, approved by, or otherwise connected with Plaintiffs;

d.  further infringing the FLOW HIVE Patent and/or the FLOW HIVE Trademarks and damaging Plaintiffs' goodwill;

e.  aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the FLOW HIVE Patent and/or the FLOW HIVE Trademarks;

f.  otherwise competing unfairly with Plaintiffs in any manner;

g.  shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiffs, nor authorized by Plaintiffs to be sold or offered for sale, and which copy the FLOW HIVE Patent and/or FLOW HIVE Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof;

h.  using, linking to, transferring, selling, exercising control over, or otherwise owning any online marketplace accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to

20

sell or is the means by which Defendants could continue to sell Counterfeit Products; and

    i.   operating and/or hosting online marketplace accounts at the Defendant Internet Stores that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product embodying the FLOW HIVE Design Patent Registrations and/or the FLOW HIVE Trademarks, or any reproduction, counterfeit copy or colorable imitation thereof that is not a genuine FLOW Hive or not authorized by Plaintiffs to be sold in connection with the FLOW HIVE Patent and/or the FLOW HIVE Trademarks.

74.    Entry of an Order that any online marketplace account provider:

    a.   disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products, including any accounts associated with the Defendants listed on Schedule A;

    b.   disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products; and

    c.   take all steps necessary to prevent links to the Defendant Internet Stores identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Internet Stores from any search index.

75.    That Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged.

76.     In the alternative, that Plaintiffs be awarded statutory damages pursuant to 15 U.S.C. § 1117(c) of not less than $1,000 and not more than $2,000,000 for each and every use of the FLOW HIVE Trademarks;

77.     That Plaintiffs be awarded such damages as it shall prove at trial against Defendants that are adequate to compensate Plaintiffs for Defendants' infringement of the FLOW HIVE Patent, but in no event less than a reasonable royalty for the use made of the invention by the Defendants, together with interest and costs, pursuant to 35 U.S.C. § 284;

78.     That the amount of damages awarded to Plaintiffs to compensate Plaintiffs for infringement of Plaintiffs' FLOW HIVE Patent be increased by three times the amount thereof, as provided by 35 U.S.C. § 284;

79.     In the alternative, that Plaintiffs be awarded all profits realized by Defendants from Defendants' infringement of Plaintiff's FLOW HIVE Patent, pursuant to 35 U.S.C. § 289;

80.     That Plaintiffs be awarded its reasonable attorneys' fees and costs; and

81.     Award any and all other relief that this Court deems just and proper.

Dated: October 17, 2025                     Respectfully submitted,


                                            **BOIES SCHILLER FLEXNER LLP**
                                    By:
                                            */s/ Beverly Luu*
                                            Beverly Luu
                                            2029 Century Park East, Suite 1520
                                            Los Angeles, CA 90067
                                            Tel: (213) 629-9040
                                            Email: bluu@bsfllp.com

                                            *Attorney for Plaintiffs*
                                            *Flowbee Australia Pty Ltd*
                                            *BeeInventive Pty Ltd*
                                            *Cedar Anderson*